UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW BRYANT SHEETS,

    Plaintiff,

v.                                      Case No.:  2:24-cv-704-SPC-KCD

KELVIN JIMENEZ, DYLAN J
RENZ and CITY OF PUNTA
GORDA,

    Defendants.
_____/

## OPINION AND ORDER

Before the Court are two Motions to Dismiss—one filed by Officers Kelvin Jimenez and Dylan Renz (Doc. 21) and one filed by the City of Punta Gorda (Doc. 22).  Plaintiff responded to each motion (Docs. 26, 27), so the motions are ripe for review.

Plaintiff, proceeding pro se, brings this action under 42 U.S.C. § 1983 for violations of his First Amendment rights.  (Doc. 18).[1]  On August 12, 2020, Plaintiff entered the Punta Gorda Public Safety Complex to file a complaint.  All the while, he was video recording this experience with a body camera.  The problem is a city ordinance renders it unlawful "to record video and/or sound

---

[1] The Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to" Plaintiff.  *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009).

within City-owned, controlled, and leased property, without the consent of all persons whose voice or image is being recorded." Punta Gorda Code § 15-48(e).[2] Because Plaintiff was actively violating this Ordinance when he entered the Public Safety Complex, he was met by Officer Jimenez who asked Plaintiff to step outside. Once outside, Officer Jimenez explained to Plaintiff that he "cannot be inside while recording." (Doc. 18 ¶ 19). Two months later, on October 1, 2020, Plaintiff returned to the Public Safety Complex to conduct a records request. This time though, he was trespassed from the building by Officer Renz for again violating the Ordinance. (Doc. 18 ¶¶ 25-26).

Based on these confrontations, Plaintiff sues the Officers (in their individual and official capacities) under various § 1983 theories. First, he claims the Officers violated his First Amendment rights by engaging in viewpoint discrimination (counts I and IV). He next argues their actions amounted to a prior restraint, which also violated his First Amendment rights (counts II and III). And he claims their conduct was retaliation for exercising his First Amendment rights (counts V and VI). He also brings a *Monell* claim against the City for failure to train (count VII). And in Count VIII, he brings

---

[2] The Ordinance is not a complete bar to unconsented recording. It provides an exception for recordings "within the City Council Chambers, conference rooms, and other locations in which a public meeting is being conducted pursuant to a public notice" as well as "law enforcement activities." Punta Gorda Code § 15-48(e).

2

essentially the same claim again while also insisting the Ordinance is "unconstitutional on its face." (Doc. 18).

This is a familiar case. Back in 2019, Plaintiff brought a similar action—*Sheets v. City of Punta Gorda*, 2:19-cv-484-SPC-MM. There, Plaintiff was cited under the same Ordinance for unconsented video recording inside City Hall. He asked the Court to enjoin the Ordinance as unconstitutional under the First and Fourteenth Amendments. Like here, he claimed the Ordinance was viewpoint discriminatory and constituted a prior restraint. In denying his motion for a preliminary injunction, the Court made clear that "the Ordinance is facially viewpoint neutral because it does not target any viewpoint, ideology, or opinion."[3] *Sheets v. City of Punta Gorda, Fla.*, 415 F. Supp. 3d 1115, 1124 (M.D. Fla. 2019). And it similarly found the Ordinance was not a prior restraint. *Id.* at 1126. Plaintiff then voluntarily dismissed the case.

Despite the Court's ruling, Plaintiff refused to back down. As discussed above, he engaged in identical conduct in a different city building and now files suit. This time though, he does not just attack the Ordinance directly. Instead,

---

[3] In 2019, the Court determined that City Hall was a limited public forum. Thus, the restriction on speech needed to be view-point neutral and reasonable. *McDonough v. Garcia*, 116 F.4th 1319 (11th Cir. 2024) ("In a limited public forum, as we have said, the government's restrictions on speech must not discriminate against speech on the basis of viewpoint and must be reasonable in light of the purpose served by the forum." (citation omitted)). Here, the parties agree the Public Safety Complex is a limited public forum, so the analysis is the same.

he attacks the Officers who enforced it and the City for failing to train its officers. Still, the substance of the attacks is the same.

Defendants move to dismiss the claims. The Officers argue that they cannot be sued in their official capacity, that they are entitled to qualified immunity, and that Plaintiff's claims are barred by collateral estoppel. (Doc. 21). The City argues Plaintiff fails to state a claim against it and that Plaintiff's claims are barred by collateral estoppel. (Doc. 22).

With that background, the Court turns to the merits. First, the Court addresses the collateral estoppel argument. "Collateral estoppel or issue preclusion forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit." *CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1317 (11th Cir. 2003). This doctrine applies when: (1) the issues at stake are identical to the one involved in the prior litigation; (2) the issues were actually litigated in the prior suit; (3) the determination of the issues in the prior litigation was a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issues in the earlier proceeding." *Id.* Defendants have not shown this doctrine applies.[4]

---

[4] Defendants incorrectly assert that Florida collateral estoppel applies. Because Defendants argue a prior federal decision bars this action, federal preclusion principles apply. *See CSX Transp.*, 327 F.3d at 1316.

4

Defendants rely on this Court's ruling from Plaintiff's 2019 case. But there, Plaintiff attacked the constitutionality of the Ordinance itself. Here, Plaintiff argues the Officers' enforcement of the Ordinance violated his First Amendment rights, which is a distinct issue. The issues raised in his *Monell* claim against the City—failure to train—are also new. That said, there is some overlap between the issues in each case. But even so, the 2019 order denied Plaintiff's motion for a preliminary injunction. Given that posture, it is unclear whether the previously addressed issues were "actually litigated" or necessary for "judgment." And Defendants present no authority on this point. So the case may press forward.[5]

The case may not proceed, however, against the Officers in their official capacity. Plaintiff brings his claims against the Officers in both their individual and official capacities. The Officers argue Plaintiff cannot assert claims against them in their official capacity while also maintaining a claim against the City. This is true. "In contrast to individual capacity suits, when an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). "Such suits against municipal officers are therefore, in actuality, suits directly

---

[5] That said, the Court is mindful of its previous rulings and, where appropriate, gives it precedential effect.

against the city that the officer represents." *Id.* Because the claims against the Officers in their official capacity are duplicative of the claims against the City, they must be dismissed. *See Am. Humanist Ass'n, Inc. v. City of Ocala*, 127 F. Supp. 3d 1265, 1273 (M.D. Fla. 2015).

Moving on to the claims against the Officers, beginning with viewpoint discrimination (counts I and IV). According to Plaintiff, Officer Jimenez required him to leave the Public Safety Complex for video recording, and Officer Renz trespassed him for the same. However, just a few days before Plaintiff first entered the Public Safety Complex, media crews were permitted to set up cameras and record there. In Plaintiff's view, this disparity in treatment reveals the Officers' actions against him were based on his viewpoint. (Doc. 18 ¶¶ 56, 86). The Court construes this as a selective enforcement claim. *See Matacchiero v. McCormick*, No. 3:24CV105-TKW-ZCB, 2024 WL 3629442, at *5 (N.D. Fla. Aug. 1, 2024) ("Plaintiff does not argue that the public comment restrictions in the WCBCC meeting policies facially discriminated against his viewpoint; he only argues that Defendant selectively enforced the restrictions against him because of his viewpoint."). But the glaring problem is he does not allege any viewpoint that purportedly formed the basis of his restriction.

Plaintiff fails to show he was targeted for any viewpoint. "A restriction on speech constitutes viewpoint discrimination 'when the specific motivating

6

ideology or the opinion or perspective of the speaker is the rationale for the restriction.'" *Jackson v. McCurry*, 762 F. App'x 919, 930 (11th Cir. 2019) (quoting *Rosenberger v. Rector & Visitors of Univ. of Vir.*, 515 U.S. 819, 829 (1995)). Although Plaintiff alleges others were permitted to record in the Public Safety Complex without repercussion, he does not claim his restriction was based on a held ideology, opinion, or perspective. So he fails to allege viewpoint discrimination, and counts I and IV are dismissed.[6]

In counts II and III, Plaintiff contends that the Officers' actions amounted to an unlawful prior restraint. The Officers invoke qualified immunity. "A motion to dismiss a complaint on qualified immunity grounds will be granted if the complaint fails to allege the violation of a clearly established constitutional right." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007). To establish qualified immunity, the Officers must show the allegedly unconstitutional conduct occurred while they were acting within the scope of their discretionary authority. *Id.* This point is not disputed. *See also Patrick v. McGuire*, No. 8:24-CV-999-MSS-NHA, 2024 WL 4803217, at *4 (M.D. Fla. Nov. 15, 2024) (officer acted within discretionary authority when she told plaintiff to leave the government office pursuant to the office's policy against video recording). So the burden shifts to Plaintiff to show: (1) the

---

[6] Because Plaintiff will be permitted leave to amend these claims, the Court does not reach the qualified immunity analysis.

7

Officers violated a constitutional right, and then (2) that the violation was clearly established. *Griffin*, 496 F.3d at 1199. If Plaintiff cannot establish the Officers violated a constitutional right, the qualified immunity inquiry ends. *Id.* at 1200; *see also Swinford v. Santos*, 121 F.4th 179, 191 (11th Cir. 2024) (because the officers did not commit a constitutional violation "they are entitled to qualified immunity, and we end our qualified immunity analysis").

The Officers are entitled to qualified immunity on Plaintiff's prior restraint claims. To begin, his Complaint includes only conclusory assertions that the Officers' conduct constituted an unlawful prior restraint. And his Response to the Officers' motion to dismiss offers nothing of substance. Given that it is his burden to show the Officers' conduct was unlawful, he falls well short. Putting aside this deficiency, he cannot show a constitutional violation because the Officers' enforcement of the Ordinance was not a prior restraint.

"A prior restraint on expression exists when the government can deny access to a forum for expression before the expression occurs." *United States v. Frandsen*, 212 F.3d 1231, 1236–37 (11th Cir. 2000) (citation omitted). Conversely, if the government penalizes expression *after* it occurs, then there is no prior restraint. *See Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1223 (11th Cir. 2017) ("Prior restraints contrast with 'subsequent punishments,' which regulate a given type of speech by penalizing the speech only after it occurs."). Such is the case here.

8

A good place to start this analysis is with the Ordinance itself. It provides that "if anyone is observed to be recording video and/or sound within City-owned, controlled or leased property, without the consent of all persons whose voice or image is being recorded, and such person refuses to cease activity after being advised that such activity is prohibited under this Ordinance, such refusal shall be considered to be a disruption to the work of City government." Punta Gorda Code § 15-48(e). At that point, the violator can be asked to "immediately leave the premises." *Id.* And if the violator refuses to do so, he "shall be considered a trespasser" and law enforcement "may issue a trespass warning notice for this conduct." *Id.* Because a violator of the Ordinance is penalized only *after* he records in a City building without consent and subsequently refuses to cease the unconsented recording, the Ordinance is not a prior restraint. Indeed, the Court explained this to Plaintiff back in 2019 when it rejected the same argument. *See Sheets*, 415 F. Supp. 3d at 1126 (explaining the Ordinance is not a prior restraint because it "does not penalize unconsented recording. Instead, it penalizes the subsequent refusals to stop recording without consent or leave City Hall because they disrupt the purpose of the forum.").

Having established the Ordinance is not a prior restraint, the rest is easy. Because the Ordinance is not a prior restraint (and there is no suggestion the Officers failed to comply with the Ordinance), it follows then that the

9

Officers' enforcement of the Ordinance is not either. *See Patrick*, 2024 WL 4803217, at *6 (concluding that because the county policy withstood constitutional scrutiny, "Defendants' actions taken to enforce the policy did not violate Plaintiff's constitutional rights"). Plaintiff's own allegations confirm this. He alleges that he was already video recording when he entered the Public Safety Complex on August 12, 2020. (Doc. 18 ¶ 14). He was then approached by Officer Jimenez who asked him to step outside because he cannot record inside the building. (Doc. 18 ¶¶ 15-16). Then when Plaintiff returned two months later, camera rolling,[7] Officer Renz issued him a trespass citation. (Doc. 18 ¶¶ 22-26). Because it was not until after Plaintiff began recording inside the city building that the Officers stepped in, their actions were not a prior restraint. And with no violation of Plaintiff's First Amendment rights, the Officers are entitled to qualified immunity on counts II and III.

Next up are Plaintiff's retaliation claims against the Officers. "Retaliation against the exercise of First Amendment rights is a well-established basis for section 1983 liability." *O'Boyle v. Sweetapple*, 187 F. Supp. 3d 1365, 1370 (S.D. Fla. 2016) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1255–56 (11th Cir.2005)). "The elements of a First Amendment retaliation

---

[7] The still image from Plaintiff's body camera of Officer Renz addressing Plaintiff inside the Public Safety Complex further establishes this point. (Doc. 18 ¶ 23).

claim are (1) the plaintiff engaged in speech or an act that was constitutionally protected, (2) the defendant's retaliatory conduct adversely affected the protected speech or act, and (3) there is a causal connection between the retaliatory actions and the adverse effect on the constitutionally-protected speech or act." *Id.* Under this rubric, Plaintiff's claims fail.

Plaintiff asserts that, by precluding him from recording in the Public Safety Complex, the Officers "sought to punish Plaintiff for exercising his first amendment rights[.]" (Doc. 18 ¶¶ 98, 108). But as this Court previously concluded, the Ordinance that makes unconsented recording in City buildings unlawful is both reasonable and view-point neutral and, thus, constitutional. *Sheets*, 415 F. Supp. 3d at 1124. *See also Patrick*, 2024 WL 4803217, at *4 (finding the Pasco County Tax Collector's Office's policy against video recording without prior approval was viewpoint neutral and reasonable). It follows then that Plaintiff was not engaged in an act that was constitutionally protected. So he cannot state a retaliation claim, the Officers are entitled to qualified immunity, and counts V and VI are dismissed with prejudice. *See Kushner v. Buhta*, No. 16-cv-2646 (SRN/SER), 2018 WL 1866033, at *13 (D. Minn. Apr. 18, 2018) *aff'd*, 771 F. App'x 714 (8th Cir. 2019) (finding officials entitled to qualified immunity on plaintiff's First Amendment retaliation claim because the court already determined he did not have a First Amendment right to video record).

Finally, we turn to the claims against the City. In Count VII, Plaintiff brings a *Monell* claim, asserting that City employees have repeatedly and unlawful violated his rights, demonstrating "a deliberate indifference and a failure to train its employees properly on a viewpoint discrimination." (Doc. 18 ¶ 119). "To impose *Monell* liability, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Underwood v. City of Bessemer*, 11 F.4th 1317, 1333 (11th Cir. 2021) (citation omitted). "In limited circumstances, a local government's decision not to train certain employees to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1328 (11th Cir. 2015) (cleaned up and citation omitted). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). And beyond that, a plaintiff "must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009). Plaintiff's claim falls short of these standards.

As has been explained, Plaintiff fails to show his constitutional rights were violated. So, his *Monell* claim falters from the start. Nor does he allege the City was on notice of its employees' viewpoint discrimination and deliberately chose not to take action. And his attempt to establish a pattern of constitutional violations falls short. He lists four instances in which he believes City employees improperly discriminated based on his viewpoint. But two of them are the actions by Officers Jimenez and Renz which won't work because, as discussed above, Plaintiff has not shown the Officers violated his constitutional rights. He also points to a time he was trespassed from a farmer's market for recording without any suggestion he was trespassed based on a held viewpoint. Lastly, he alleges he received a ticket for wearing an anti-police shirt.[8] Even assuming this was improper, this isolated incident does not establish a pattern, nor is it similar enough to the alleged violation here—video recording in a government building—to have put the City on notice of a need to train. *See Connick*, 563 U.S. 51 at 62-63 (noting that previous *Brady* violations by prosecutors were insufficient to put the district attorney's office on notice of the need to train because "those incidents [were] not similar to the violation at issue"); *Weiland*, 792 F.3d at 1329 n.21. So Count VII is dismissed.

---

[8] It is unclear if he is alleging the shirt formed the basis of the citation or if he believes he was issued a ticket for some other violation but was targeted because of his shirt.

13

Count VIII is a mess. Plaintiff titles it as a First Amendment Free Press and *Monell* violation and alleges that the City "through its procedures, policies, practices, and customs engaged in conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights." (Doc. 18 ¶ 129-30). This sounds a lot like the last claim. But he also "facially challenges" the Ordinance "as unconstitutional under both state and federal law." (Doc. 18 ¶ 124). So it is difficult to unpack what relief Plaintiff pursues.

To the extent that Plaintiff intends to bring a *Monell* claim, it is dismissed as duplicative of count VII. *See Appleby v. Knauf Gips KG*, No. 22-CIV-61411-RAR, 2023 WL 3844770, at *2 (S.D. Fla. June 5, 2023) ("To promote judicial economy, a court should dismiss claims that are duplicative of other claims."). As for a facial challenge to the Ordinance, he has already tried and failed at challenging its constitutionality. This Court already determined the Ordinance is both viewpoint neutral and reasonable. *See Sheets*, 415 F. Supp. 3d at 1124. To be sure, another similar county policy—precluding video recording in the tax collector's office without prior approval—was recently found constitutional. *See Patrick*, 2024 WL 4803217, at *4. So the Court will not entertain the argument any further. However, the Court briefly addresses Plaintiff's attempt to strike down the Ordinance as a violation of Florida law.

Plaintiff never specifies what Florida constitutional provision or statute he believes the Ordinance violates. But he asserts Florida law requires that "public business is to be conducted in sunshine." (Doc. 18 ¶ 127). The Court construes this as a violation of Florida's Sunshine Law claim. Florida's Sunshine Law requires that all government meetings at which official acts are to be taken must be open to the public at all times and reasonably noticed. Fla. Stat. § 286.011(1). Its purpose is to protect the public from "closed door" politics. *Sarasota Citizens For Responsible Gov't v. City of Sarasota*, 48 So. 3d 755, 762 (Fla. 2010). Restricting nondisruptive video recording at public meetings "violates the statute's spirit, intent, and purpose." *Pinellas Cnty. Sch. Bd. v. Suncam, Inc.*, 829 So. 2d 989, 991 (Fla. Dist. Ct. App. 2002). All the same, the Ordinance explicitly permits unconsented recordings "within the City Council Chambers, conference rooms, and other locations in which a public meeting is being conducted pursuant to a public notice[.]" Punta Gorda Code § 15-48(e). So the Ordinance does not violate Florida's Sunshine Law or federal law, and Count VIII is dismissed with prejudice.

This case sure seems like a repackaged version of Plaintiff's case from 2019. While the Court finds it unlikely an amended complaint will bring him any greater success, it will allow Plaintiff to file a second amended complaint *only* as to counts I, IV, and VII. The other claims are dismissed with prejudice.

Accordingly, it is now

**ORDERED:**

1. Defendants' Motions to Dismiss (Docs. 21, 22) are **GRANTED.**

2. Counts II, III, V, VI, and VIII are **DISMISSED with prejudice.**

3. Counts I, IV, and VII are **DISMISSED without prejudice.**

4. Counts I-VI are **DISMISSED with prejudice** against Officers Jimenez and Renz in their official capacity.

4. On or before **December 31, 2024**, Plaintiff may file a second amended complaint as to counts I, IV, and VII only. Failure to do so will cause the Court to dismiss this case without further notice.

**DONE** and **ORDERED** in Fort Myers, Florida on December 12, 2024.

*SHERI POLSTER CHAPPELL*
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record