UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW BRYANT SHEETS,

    Plaintiff,

v.                                            Case No.:   2:24-cv-704-SPC-KCD

KELVIN JIMENEZ, DYLAN J
RENZ and CITY OF PUNTA
GORDA,

    Defendants.
_____/

**OPINION AND ORDER**

Before the Court are two Motions to Dismiss—one filed by the City of Punta Gorda (Doc. 30) and one filed by Officers Kelvin Jimenez and Dylan Renz (Doc. 31). Plaintiff responded to each motion (Docs. 33, 34), so the motions are ripe for review.

Plaintiff, proceeding pro se,[1] brings this action under 42 U.S.C. § 1983 for violations of his First Amendment rights. (Doc. 18).[2] Plaintiff is a self-

---

[1] Although Plaintiff is proceeding without a lawyer, he is no stranger to federal court. *See Sheets v. City of Punta Gorda, Florida*, 2:19-cv-484-SPC-MM; *Sheets v. City of Punta Gorda, Florida*, 2:22-cv-246-SPC-NPM; *Sheets v. Bell*, 2:23-cv-35-JLB-KCD; *Sheets v. City of Punta Gorda et al.*, 2:24-cv-495-JLB-KCD; *Sheets v. Prummell et al.*, 2:24-cv-943-SPC-NPM; *Sheets v. Charlotte County et al.*, 2:24-cv-958-JES-KCD; *Sheets v. City of Punta Gorda et al.*, 2:25-cv-61-JLB-KCD; *Sheets v. City of Punta Gorda et al.*, 2:25-cv-130-JLB-KCD. *See also Sheets v. City of Punta Gorda*, 384 So. 3d 180 (Fla. Dist. Ct. App. 2024) (suit in Florida state court).

[2] The Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to" Plaintiff. *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009).

proclaimed citizen journalist who holds an anti-police and anti-government viewpoint.  In August 2020, he entered the Punta Gorda Public Safety Complex to file a complaint while video recording this experience with a body camera. But a city ordinance renders it unlawful "to record video and/or sound within City-owned, controlled, and leased property, without the consent of all persons whose voice or image is being recorded."  Punta Gorda Code § 15-48(e). Because Plaintiff was recording when he entered the Public Safety Complex, Officer Jimenez asked Plaintiff to step outside, explaining to Plaintiff that he could not be inside while recording.  Two months later, Plaintiff entered the same building to conduct a records request and engaged in the same conduct. This time, he was issued a trespass warning (Doc. 29-2) by Officer Renz for violating the Ordinance.  (Doc. 29).

Plaintiff feels the Officers do not neutrally enforce the Ordinance.  He points to three news stories broadcasted on local media outlets (with links to the videos provided) as evidence of this effect.[3]  (Doc. 29 at 15-17).  Portions of these broadcasts include video-recorded interviews with Punta Gorda police officers conducted inside the Public Safety Complex.  Yet unlike Plaintiff, these journalists were not trespassed or asked to leave for recording inside the City-

---

[3] Because the screen shots of and links to the videos are included in the second-amended complaint, the Court may consider them at this stage. *See One for Israel v. Reuven*, No. 21-61475-CIV, 2022 WL 4465389, at *4 (S.D. Fla. Sept. 26, 2022).

2

owned building. In Plaintiff's view, this inconsistency in enforcement of the Ordinance can only mean one thing: the reason Officer Jiminez and Renz precluded him from recording is because of his anti-police viewpoint.

Based on this purportedly inconsistent treatment, Plaintiff sues the Officers in their individual capacity under § 1983 claiming the Officers violated his First Amendment rights by engaging in viewpoint discrimination. He also brings a *Monell* claim against the City for failure to train its employees. Defendants move to dismiss the claims. The Officers argue that Plaintiff fails to state a viewpoint discrimination claim and that they are entitled to qualified immunity. (Doc. 31).[4] The City argues Plaintiff fails to state a claim against it. (Doc. 30).

To survive a Federal Rule of Civil Procedure 12(b)(6) motion, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Bare "labels and conclusions, and a formulaic recitation of the elements of a cause of action," do not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See id.* at 570. A claim is facially plausible

---

[4] The Officers' motion cites video footage and claims a copy of the footage was sent to the Court. Although the Court received a list of the video exhibits with a notation that the videos were "to be provided via thumbdrive," the Court never received them. This makes little difference though because viewing the footage would not have altered the Court's analysis.

when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

First, Plaintiff's viewpoint discrimination claims. "A restriction on speech constitutes viewpoint discrimination 'when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.'" *Jackson v. McCurry*, 762 F. App'x 919, 930 (11th Cir. 2019) (quoting *Rosenberger v. Rector & Visitors of Univ. of Vir.*, 515 U.S. 819, 829 (1995)). The Eleventh Circuit has already found the Ordinance itself to be viewpoint-neutral and reasonable and thus constitutional. *See Hoffman v. Delgado*, No. 23-13213, 2025 WL 25856, at *3 (11th Cir. Jan. 3, 2025). In such circumstance, when the law or policy is constitutional, a plaintiff's viewpoint discrimination claim hinges on "whether the policy was: (1) used in a way that discriminated based on a speaker's viewpoint, or (2) enforced arbitrarily." *Matacchiero v. McCormick*, No. 3:24CV105-TKW-ZCB, 2024 WL 3629442, at *5 (N.D. Fla. Aug. 1, 2024) (citations omitted). This is what Plaintiff seems to assert here.

The Court construes Plaintiff's viewpoint discrimination claims as selective (or arbitrary) enforcement claims. Boiled down, Plaintiff argues the

Officers restricted his access to the Public Safety Complex for violating the Ordinance because of his anti-police, anti-government viewpoint while permitting other journalists access. This is a selective-enforcement claim. *Cf. Matacchiero*, 2024 WL 3629442, at *5 ("Plaintiff does not argue that the public comment restrictions in the WCBCC meeting policies facially discriminated against his viewpoint; he only argues that Defendant selectively enforced the restrictions against him because of his viewpoint.").

Plaintiff fails to state a selective-enforcement claim. "To state a claim for selective enforcement, a plaintiff must make a prima facie showing that he has been singled out for prosecution although others similarly situated, who have committed the same acts, have not been prosecuted." *Bryan Media, Inc. v. City of St. Petersburg*, No. 8:05-CV-291-T-MSS, 2006 WL 8440094, at *5 (M.D. Fla. Dec. 11, 2006), *aff'd*, 293 F. App'x 717 (11th Cir. 2008). Indeed, "[a] critical element of a selective enforcement claim is that a comparator or, in other words, 'others similarly situated' have been treated differently than the plaintiff." *Shadow Oaks, LLP v. City of Ocala*, No. 5:21-CV-564-ACC-PRL, 2022 WL 22247808, at *5 (M.D. Fla. Nov. 4, 2022), *report and recommendation adopted*, 2022 WL 22247805 (Dec. 1, 2022). As a comparator, Plaintiff points to three different video broadcasts by local news networks in which officers are filmed and interviewed inside the Public Safety Complex. As Plaintiff sees it, the fact the journalists who filmed these interviews were not cited under the

5

Ordinance for recoding in the Public Safety Complex (but he was) reveals the selective nature of its enforcement by the Officers. There are multiple problems with his theory.

Although Plaintiff broadly alleges other journalists were permitted to video record in the Public Safety Complex without repercussion, he does not allege the viewpoint of these journalists, let alone that their viewpoint differs from his. Without this, his claims fail. *See Matacchiero*, 2024 WL 3629442, at *6 (dismissing a First Amendment selective-enforcement claim because the plaintiff "did not identify any other speakers who had different viewpoints than him"); *Maldonado v. Town of Cottonwood*, No. 1:21-CV-645-ECM, 2023 WL 6377295, at *10 (M.D. Ala. Sept. 29, 2023) (dismissing the plaintiff's selective-enforcement claim because she failed to "identify a fact supporting her conclusion that the Officers selectively enforced the law based on gender, perceived race, or economic status").[5]

There is another issue. According to the trespass warning attached to Plaintiff's second-amended complaint, Plaintiff violated the Ordinance on that

---

[5] In their motion, the Officers appear to argue that no viewpoint discrimination occurred because Plaintiff was properly trespassed for violating the Ordinance. But, even if true, this misses the point of Plaintiff's selective-enforcement claim. A lawful citation does not dispose of a selective-enforcement claim if Plaintiff can produce "objective evidence that he was arrested [or cited] when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves v. Bartlett*, 587 U.S. 391, 407 (2019) (applying this rule to a First Amendment retaliatory-arrest claim).

date and five prior occasions. (Doc. 29-2).[6] On the other hand, the journalists who conducted the three cited news stories never violated the Ordinance. Their video recording inside the Public Safety Complex comprised short interviews with various officers in a secure building area. Clearly then, the journalists had consent to video record.[7] This means they never violated the Ordinance, which only precludes video and sound recording within City property "*without the consent* of all persons whose voice or image is being recorded." *See* Punta Gorda Code § 15-48(e) (emphasis added). So the reason these journalists were not cited under the Ordinance is simple—they did not violate it. This is contrary to Plaintiff who apparently has a history of unconsented recording.[8] So Plaintiff's cited comparators are not "similarly situated" to him, and his selective-enforcement claims fall flat.

To be sure, Plaintiff references several other occasions in which the Ordinance was not enforced. (*See* Doc. 29 at 4-5). But even assuming their purpose was to support his viewpoint discrimination claims (which is not clear), they fail to do so. For instance, Plaintiff attaches a photo depicting a

---

[6] The Court may consider exhibits attached to the complaint. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).

[7] Plaintiff seems to acknowledge this consent when he alleges that "other journalists . . . were even invited to film." (Doc. 29 at 24).

[8] Plaintiff's second-amended complaint and his response attack the legitimacy of the trespass warning he was issued. But this does not affect his selective-enforcement claims.

news cameraman setting up his camera in the Public Safety Complex on August 1, 2020. (Doc. 29 ¶ 8). Plaintiff does not allege the viewpoint of this cameraman. But the larger issue is he fails to allege that Officer Jiminez or Renz were the ones who permitted this cameraman to record, let alone that they were even present at the time. The same is true for the other videos Plaintiff cites of various YouTubers recording inside the Public Safety Complex. What's more, these YouTubers appear to share the same anti-police viewpoint as Plaintiff, which, if true, is disqualifying as a comparator. *See Matacchiero*, 2024 WL 3629442, at \*6 (comparator must hold a different viewpoint than the plaintiff for selective-enforcement claim).

One more problem. Plaintiff's claim against Officer Renz hinges on his allegation that Officer Renz issued him a trespass warning for violating the Ordinance. (Doc. 29 at 22). But this is not true. The trespass warning shows that Officer Renz was not the one who issued it to Plaintiff—another officer did. Indeed, Plaintiff concedes this error in his response. (Doc. 33 at 16). So, for all these reasons, Plaintiff fails to allege the Officers selectively-enforced the Ordinance against him.[9]

---

[9] The Officers argue they are entitled to qualified immunity on Plaintiffs' viewpoint discrimination claims. (Doc. 31). But since Plaintiff will be permitted one last opportunity to amend these claims, the Court does not reach the qualified immunity analysis.

Plaintiff's *Monell* claim against the City also falls short. He brings a claim against the City for deliberate indifference and failure to train, asserting that "[o]n four separate occasions Plaintiff Sheets First Amendment rights were violated by untrained Punta Gorda employees who engaged in viewpoint discrimination" and that the City's procedures, policies, practices, and customs were the moving force behind these violations. (Doc. 29 at 24). But as before, he fails to adequately allege this claim.

As the Court previously advised Plaintiff, "[t]o impose *Monell* liability, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Underwood v. City of Bessemer*, 11 F.4th 1317, 1333 (11th Cir. 2021) (citation omitted). In limited circumstances, a local government's decision not to train certain employees to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1328 (11th Cir. 2015) (cleaned up and citation omitted). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). This requires presenting "some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a

9

deliberate choice not to take any action." *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009).

Just like last time, Plaintiff's claim falters from the start because he has yet to show his constitutional rights were violated. He also fails to allege that the City was on notice of its employees' viewpoint discrimination. And on that score, the Court is not so sure Plaintiff adequately alleges a custom of viewpoint discrimination.

To establish a custom or policy for *Monell* purposes, Plaintiff must show "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled" as to have the force of law. *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991); *see also Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011). In attempting to meet this standard, Plaintiff points to several times when he believes Punta Gorda officers discriminated against individuals based on their viewpoint—the referenced "four separate occasions" as well as the videos of YouTubers in the Public Safety Complex. The problem is all but three such instances occurred *after* the purported viewpoint discrimination giving rise to this case. To support a *Monell* failure to train claim, the incidents showing a pattern of constitutional violations must have occurred *before* the plaintiff's alleged constitutional deprivation. *See Baker v. City of Atlanta*, 662 F. Supp. 3d 1308, 1319 (N.D. Ga. 2023) (explaining that incidents which occurred after the

10

plaintiff's arrest and prosecution could not have placed the city on notice of any need to train at the time of the plaintiff's arrest). So only three of Plaintiff's cited violations can arguably be considered.

Of the three viable instances of purported viewpoint discrimination, two are the underlying incidents giving rise to this case, and the other occurred only three months prior—the farmer's market incident (Doc. 29 ¶ 58). There is no bright-line rule representing when a constitutional violation transforms from a couple of 'isolated instances' into a pattern or policy. *See Williams v. Fulton Cnty. Sch. Dist.*, 181 F. Supp. 3d 1089, 1122 (N.D. Ga. 2016). But the Court is not so sure that the two underlying incidents plus one other, occurring over the course of only a few months, demonstrates a "longstanding and widespread practice" of viewpoint discrimination that is "obvious, flagrant, [and] rampant[.]" *Marantes v. Miami-Dade Cnty.*, 649 F. App'x 665, 672 (11th Cir. 2016); *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1266 (11th Cir. 2010) (finding two complaints of sexual assault prior to the plaintiff's incident did not establish a custom of abuse). Plaintiff must address this and the other pleading deficiencies. The *Monell* claim is again dismissed.

Plaintiff is advised that his forthcoming third-amended complaint is his final opportunity to get this case off the ground. Any further pleading deficiencies will result in dismissal of this action with prejudice. *See Mandala v. Tire Stickers, LLC*, 829 F. App'x 896, 903 (11th Cir. 2020) ("A district court

need not allow an amendment where there has been repeated failure to cure deficiencies by amendments previously allowed." (cleaned up)).

Accordingly, it is now

**ORDERED:**

1. Defendants' Motions to Dismiss (Docs. 30, 31) are **GRANTED.**

2. Plaintiff's second-amended complaint is **DISMISSED without prejudice.**

3. By **March 27, 2025**, Plaintiff must file a Third Amended Complaint. *A failure to do so will result in this case's dismissal without further notice.*

**DONE** and **ORDERED** in Fort Myers, Florida on March 13, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record