UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW BRYANT SHEETS,

    Plaintiff,

v.   Case No.:  2:24-cv-704-SPC-KCD

KELVIN JIMENEZ, DYLAN J. RENZ, and CITY OF PUNTA GORDA,

    Defendants.
_____/

## OPINION AND ORDER

Before the Court are two Motions to Dismiss—one filed by the City of Punta Gorda ("City") (Doc. 45) and one filed by Officers Kelvin Jimenez and Dylan Renz (Doc. 46). Plaintiff Andrew Sheets, proceeding pro se,[1] responded to each motion. (Docs. 47, 48).  Because this is Plaintiff's fourth bite at the apple and he still fails to state a claim, the Court dismisses his case with prejudice.

---

[1] Although Plaintiff is proceeding without a lawyer, he is no stranger to federal court.  See *Sheets v. City of Punta Gorda, Florida*, 2:19-cv-484-SPC-MM; *Sheets v. City of Punta Gorda, Florida*, 2:22-cv-246-SPC-NPM; *Sheets v. Bell*, 2:23-cv-35-JLB-KCD; *Sheets v. City of Punta Gorda et al.*, 2:24-cv-495-JLB-KCD; *Sheets v. Prummell et al.*, 2:24-cv-943-SPC-NPM; *Sheets v. Charlotte County et al.*, 2:24-cv-958-JES-KCD; *Sheets v. City of Punta Gorda et al.*, 2:25-cv-61-JLB-KCD; *Sheets v. City of Punta Gorda et al.*, 2:25-cv-130-JLB-KCD; *Sheets v. Martin et al.*, 2:25-cv-444-SPC-NPM; *Sheets v. Lipker et al.*, 2:25-cv-493-JLB-KCD.

Plaintiff brings this action under 42 U.S.C. § 1983 for violations of his First Amendment rights. (Doc. 43). Plaintiff is a self-proclaimed citizen journalist who holds a "government-accountability" viewpoint.[2] In August 2020, he entered the Punta Gorda Public Safety Complex to file a complaint. All the while, he was video recording this experience with a body camera. However, a city ordinance prohibits "record[ing] video and/or sound within City-owned, controlled, and leased property, without the consent of all persons whose voice or image is being recorded." Punta Gorda Code § 15-48(e). Because Plaintiff was recording when he entered the Public Safety Complex, Officer Jimenez asked Plaintiff to step outside, explaining to Plaintiff that he cannot be inside while recording. Two months later, Plaintiff entered the same building to conduct a records request and engaged in the same conduct. This time, Officer Renz issued Plaintiff a trespass warning (Doc. 43 ¶ 44) for violating the Ordinance.[3] (Doc. 43).

Plaintiff feels the Officers do not neutrally enforce the Ordinance. As evidence to this effect, he points to an instance in which Officers Renz and

---

[2] This is the newest rendition of Plaintiff's alleged viewpoint. In his prior complaint, he held an "anti-police" and "anti-government" viewpoint. (Doc. 29). And his complaints before that did not allege his viewpoint at all.

[3] Defendants attached as an exhibit to their motions some of Plaintiff's video recordings from the dates in questions. Plaintiff does not dispute the videos' authenticity, so the Court can consider them. *See Clark v. Collier Cnty. Sheriff Kevin Rambosk*, No. 2:24-CV-692-SPC-NPM, 2025 WL 589241, at *3 (M.D. Fla. Feb. 24, 2025) (considering body camera footage at the motion to dismiss stage).

Jimenez permitted a media crew from a local news station into the Public Safety Complex's back office to film a story. (Doc. 43 ¶ 14). Similarly, Officer Renz took part in a news story that another local media crew recorded at the Public Safety Complex.[4] (*Id.* ¶¶ 37–39). Because these media crews—who were not reporting on government accountability—were not trespassed or asked to leave for recording inside the City-owned building, Plaintiff believes the reason Officer Jiminez and Renz precluded him from recording is because of his government-accountability viewpoint.

Based on this purportedly inconsistent treatment, Plaintiff sues the Officers in their individual capacity under § 1983 claiming they violated his First Amendment rights by engaging in viewpoint discrimination. He also brings a *Monell* claim against the City for failure to train its employees. Defendants move to dismiss the claims. The Officers argue that Plaintiff fails to state a viewpoint-discrimination claim and that they are entitled to qualified immunity. (Doc. 46). The City argues Plaintiff fails to state a claim against it. (Doc. 45).

To survive a Federal Rule of Civil Procedure 12(b)(6) motion, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief

---

[4] Because the screen shots of and links to the videos are included in the third-amended complaint, the Court may consider them at this stage. *See One for Israel v. Reuven*, No. 21-61475-CIV, 2022 WL 4465389, at *4 (S.D. Fla. Sept. 26, 2022).

that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Bare "labels and conclusions, and a formulaic recitation of the elements of a cause of action," do not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See id.* at 570. A claim is facially plausible when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

First up, Plaintiff's viewpoint-discrimination claims. "A restriction on speech constitutes viewpoint discrimination 'when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.'" *Jackson v. McCurry*, 762 F. App'x 919, 930 (11th Cir. 2019) (quoting *Rosenberger v. Rector & Visitors of Univ. of Vir.*, 515 U.S. 819, 829 (1995)). The Eleventh Circuit has already found the Ordinance to be viewpoint-neutral and reasonable and thus constitutional. *See Hoffman v. Delgado*, No. 23-13213, 2025 WL 25856, at \*3 (11th Cir. Jan. 3, 2025). In such a circumstance, when the law or policy is constitutional, a plaintiff's viewpoint-discrimination claim hinges on "whether the policy was: (1) used in a way that discriminated based on a speaker's viewpoint, or (2) enforced arbitrarily."

4

*Matacchiero v. McCormick*, No. 3:24CV105-TKW-ZCB, 2024 WL 3629442, at *5 (N.D. Fla. Aug. 1, 2024) (citations omitted). This is what Plaintiff asserts here.

Boiled down, Plaintiff argues the Officers restricted his access to the Public Safety Complex for violating the Ordinance because of his government-accountability viewpoint while granting access to other journalists recording stories unrelated to government accountability. This is a selective-enforcement claim. *Cf. Matacchiero*, 2024 WL 3629442, at *5 ("Plaintiff does not argue that the public comment restrictions in the WCBCC meeting policies facially discriminated against his viewpoint; he only argues that Defendant selectively enforced the restrictions against him because of his viewpoint.").

Despite the Court allowing Plaintiff multiple attempts, Plaintiff again fails to state a selective-enforcement claim. "To state a claim for selective enforcement, a plaintiff must make a prima facie showing that he has been singled out for prosecution although others similarly situated, who have committed the same acts, have not been prosecuted." *Bryan Media, Inc. v. City of St. Petersburg*, No. 8:05-CV-291-T-MSS, 2006 WL 8440094, at *5 (M.D. Fla. Dec. 11, 2006), *aff'd*, 293 F. App'x 717 (11th Cir. 2008). Indeed, "[a] critical element of a selective enforcement claim is that a comparator or, in other words, 'others similarly situated' have been treated differently than the plaintiff." *Shadow Oaks, LLP v. City of Ocala*, No. 5:21-CV-564-ACC-PRL,

5

2022 WL 22247808, at *5 (M.D. Fla. Nov. 4, 2022), *report and recommendation adopted*, 2022 WL 22247805 (Dec. 1, 2022). But Plaintiff has alleged no adequate comparators.

Plaintiff points to the two news stories filmed in the Public Safety Complex, which Officers Renz and Jimenez apparently permitted. As Plaintiff sees it, the fact the media crews who filmed these stories were not cited under the Ordinance for recoding in the Public Safety Complex (but he was) reveals the selective nature of its enforcement. However, Plaintiff and the media crews are not similarly situated.

According to the trespass warning included in Plaintiff's third-amended complaint, he violated the Ordinance not only on the date in question, but also on five prior occasions. (Doc. 43 ¶ 44). Conversely, the media members Plaintiff points to were clearly invited to conduct the news stories in the Public Safety Complex and thus had consent to record.[5] This consent means the media crews never violated the Ordinance, which only precludes video and sound recording within City property "*without the consent* of all persons whose voice or image is being recorded." *See* Punta Gorda Code § 15-48(e) (emphasis added). So the reason these journalists were not cited under the Ordinance is

---

[5] Plaintiff acknowledges this consent when he alleges that "other journalists . . . were even invited to film[.]" (Doc. 43 at 25).

simple—they did not violate it.  This is contrary to Plaintiff, who apparently has a history of unconsented recording.[6]

On a similar score, there is another clear distinction between Plaintiff and the media members.  As the allegations in the third-amended complaint and incorporated videos reveal, the local news crews recorded interviews for televised news stories, which explains why they were welcomed into the Public Safety Complex.  Plaintiff, however, was not recording a news story.  He was simply filming his actions and the actions of those around him with a body camera and without prior notice or consent.  So the circumstances are not the same.[7]  *Cf. Matacchiero*, 2024 WL 3629442, at *6 ("[B]ecause the incidents involving Plaintiff and Mr. Curry are not comparable, Plaintiff cannot show viewpoint discrimination based on selective enforcement.").

Ultimately, Plaintiff fails to allege any facts suggesting his proffered comparators were similarly situated to him or that the Officers selectively enforced the Ordinance against him because of his "government

---

[6] Plaintiff's third-amended complaint and his response attack the legitimacy of the trespass warning he was issued.  But this has no bearing on his selective-enforcement claims.

[7] Plaintiff also references a few other instances in which other "government accountability journalists" were cited under the Ordinance.  (Doc. 43 ¶¶ 58–69).  But given these "journalists" share the same viewpoint as Plaintiff, they are not adequate comparators.  *See Matacchiero*, 2024 WL 3629442, at *6 (comparator must hold a different viewpoint than the plaintiff for selective-enforcement claim).  And the hyperlinked videos confirm that, like Plaintiff, these "journalists" were recording their own actions within the Public Safety Complex rather than covering an approved news story.  What's more, Plaintiff fails to allege Officers Renz or Jiminez had any involvement with these additional instances.

accountability" viewpoint. The Court thus dismisses these claims against the Officers.[8] *See K&w Prop. Grp., LLC v. City of Temple Terrace*, No. 8:23-CV-1304-CEH-TGW, 2024 WL 4025267, at *11 (M.D. Fla. Sept. 3, 2024) (dismissing selective-enforcement claim because the plaintiff "fail[ed] to plausibly allege a similarly situated comparator"); *Maldonado v. Town of Cottonwood*, No. 1:21-CV-645-ECM, 2023 WL 6377295, at *10 (M.D. Ala. Sept. 29, 2023) (dismissing the plaintiff's selective-enforcement claim because she failed to "identify a fact supporting her conclusion that the Officers selectively enforced the law based on gender, perceived race, or economic status").

One other issue is worth mentioning. Plaintiff's claim against Officer Renz still hinges on his allegation that Officer Renz issued him a trespass warning for violating the Ordinance. (Doc. 43 ¶¶ 88, 91–93). But the Court previously found (and Plaintiff previously conceded), that this is not true. (Doc. 35 at 8). The trespass warning established that Officer Renz did not issue the trespass warning to Plaintiff—another officer did. Nevertheless, Plaintiff continues to base his claim against Officer Renz on this false premise. This provides yet another reason for dismissing the selective-enforcement claim against Officer Renz.

---

[8] The Officers argue they are entitled to qualified immunity on Plaintiff's viewpoint-discrimination claims. (Doc. 46). But since Plaintiff fails to state a claim, the Court need not reach the qualified-immunity analysis.

8

Next is Plaintiff's *Monell* claim against the City. Because Plaintiff fails to show the Officers violated his constitutional rights, as a matter of law, his *Monell* claim against the City fails. *See Henning v. Walmart Stores Inc.*, 738 F. App'x 992, 999 (11th Cir. 2018) ("Without evidence that his constitutional rights were violated, Henning's § 1983 municipal liability claim against Brevard County fails as a matter of law."); *Reid v. Henry Cnty., Ga.*, 568 F. App'x 745, 749 (11th Cir. 2014) (concluding that because the plaintiff did not suffer a constitutional deprivation, he could not recover from the County under § 1983).

The Court warned Plaintiff that his third-amended complaint was his final chance to get this case off the ground. (Doc. 35 at 11). Because he still fails to state a claim, the Court dismisses this case with prejudice. *See Mandala v. Tire Stickers, LLC*, 829 F. App'x 896, 903 (11th Cir. 2020) ("A district court need not allow an amendment where there has been repeated failure to cure deficiencies by amendments previously allowed." (cleaned up)).

Accordingly, it is now

**ORDERED:**

1. Defendants' Motions to Dismiss (Docs. 45, 46) are **GRANTED.**
2. Plaintiff's case is **DISMISSED with prejudice.**
3. The Clerk is **DIRECTED** to deny any pending motions as moot, terminate any deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on June 20, 2025.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record